UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOB GOLIGHTLY, on behalf of himself and all others similarly situated,<br><br>    Plaintiffs,<br><br>    -v-<br><br>UBER TECHNOLOGIES, INC., and CHECKR, INC.,<br><br>    Defendants. | Civil Action No. 1:21-cv-03005 (LJL) |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
UBER TECHNOLOGIES, INC.'S MOTION TO COMPEL INDIVIDUAL
ARBITRATION AND DISMISS, OR ALTERNATIVELY, STRIKE PLAINTIFF'S
CLASS ALLEGATIONS AND STAY PROCEEDINGS**

Andrew M. Spurchise
Miguel A. Lopez
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022

*Attorneys for Defendant*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

I. RECENT CASE LAW CONFIRMS THAT RIDESHARE DRIVERS ARE NOT WITHIN THE TRANSPORTATION WORKER EXEMPTION ..................................... 1

    A. The Transportation Worker Exemption is Narrowly Construed and Analyzed at the Nationwide Level ............................................................................ 1

        1. Rideshare drivers are not akin to "last-mile" drivers. ................................ 3

        2. Trips to airports or transit hubs do not change the local nature of rideshare drivers' services ............................................................................. 4

        3. The minority position has been roundly rejected ....................................... 5

II. THE COURT-ORDERED DISCOVERY CONFIRMS UBER'S POSITION ................. 6

    A. The Documents Requested by Plaintiff Show No Special Concern for Interstate Commerce ................................................................................................. 7

    B. The Data Requested by Plaintiff Fails to Show that Interstate Trips are a Central Part of the Services Provided by Drivers Using the Uber App ................. 8

III. ALTERNATIVELY, PLAINTIFF IS COMPELLED TO ARBITRATE ITS CLAIMS UNDER NEW YORK LAW ........................................................................... 9

IV. CONCLUSION ................................................................................................................. 10

**PRELIMINARY STATEMENT**

Since the Court's August 11, 2021 order denying Uber's motion to stay discovery pending the Court's ruling on its motion to compel arbitration, appellate and district courts across the country have unanimously confirmed that rideshare drivers, including those using Uber's Driver App, do not come within the transportation worker exemption under Section 1 of the Federal Arbitration Act (the "FAA").

During this same time period—as the law was effectively settled—Uber responded to Plaintiff's discovery requests regarding this issue, and produced documents and data relevant to the Court's analysis, as well as documents and data that go far beyond relevant evidence needed for the Court's analysis. The discovery bolsters the same conclusion Uber demonstrated with its moving papers and that has since been consistently affirmed by appellate and district courts: drivers using Uber's Driver App "engage in fundamentally local conduct that is only tangentially or incidentally related to interstate movement." *Singh v. Uber Techs., Inc.*, No. 3:16-cv-03044, slip op. at 29 (D.N.J. Nov. 23, 2021). As such, Plaintiff's agreement to arbitrate is covered by the FAA and must be enforced.

Alternatively, regardless of whether the FAA applies, arbitration must be compelled under New York State law, as any prohibition against arbitration under state law only applies to "mandatory" arbitration agreements, not the voluntary agreement Plaintiff entered with Uber.

**ARGUMENT**

I. **RECENT CASE LAW CONFIRMS THAT RIDESHARE DRIVERS ARE NOT WITHIN THE TRANSPORTATION WORKER EXEMPTION**

    A. **The Transportation Worker Exemption is Narrowly Construed and Analyzed at the Nationwide Level**

Whether a "class of workers" comes within the FAA Section 1 transportation worker exemption mut be assessed "at the nationwide level, rather than confine[d] to any limited

1

geographic region." *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 862 (9th Cir. 2021). And to determine whether a class of workers meets the exemption, a court must consider "what the worker does, not just where the goods [or people] have been." *Id.* at 865 (internal quotation marks omitted). Thus, the Court must consider here whether Plaintiff was part of a class of workers who, at a nationwide level, engage in interstate commerce as a central part of their job description. *Davarci v. Uber Techs., Inc.*, 2021 WL 3721374, at *11 (focusing on "whether a central feature of class members' jobs involves interstate commerce"). The exemption must be narrowly construed. *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1345 (11th Cir. 2021) (to read the exemption to include a company "whose business dealings happen to cross state lines, would allow [section one]'s exception to swallow the general policy requiring the enforcement of arbitration agreements as pronounced' in section two of the Federal Arbitration Act.").

As discovery was ongoing in this case, numerous courts, including two circuit courts of appeal, issued decisions regarding whether rideshare drivers fall within the transportation worker exemption. Each of these courts reached the same conclusion: rideshare drivers are not exempt from the FAA.

In *Capriole v. Uber Technologies, Inc.*, the Ninth Circuit held that "Uber drivers, as a nationwide 'class of workers,' are not 'engaged in foreign or interstate commerce' and are therefore not exempt from arbitration under the FAA." 7 F.4th at 863. The First Circuit later came to the same conclusion with respect to drivers who use the Lyft app: "We conclude that Lyft drivers are not among a class of transportation workers engaged in interstate commerce within the meaning of section 1 as narrowly construed." *Cunningham v. Lyft, Inc.*, No. 20-1373, 2021 WL 5149039, at *7 (1st Cir. Nov. 5, 2021).

Another recent case from the Southern District of New York joined the growing majority view that drivers who use Uber's Driver App are not within the transportation worker exemption. In *Davarci v. Uber Technologies, Inc.*, No. 20-cv-9224, 2021 WL 3721374 (S.D.N.Y. Aug. 20, 2021), Judge Caproni held that "Plaintiffs are not members of a class of transportation workers engaged in interstate commerce." *Id.* at *6; *see also Aleksanian v. Uber Techs., Inc.*, No. 1:19-cv-10308 (ALC), 2021 WL 860127, at *5 (S.D.N.Y. Mar. 8, 2021) (same). The *Davarci* court persuasively reasoned "that Uber drivers in remote areas or those far from any state borders hardly ever cross state lines whereas those living in border areas do so regularly supports a finding that interstate travel is no more than incidental to an Uber driver's employment, not a core feature." *Id.* at *12.[1]

Most recently, in *Singh*, following remand by the Third Circuit, the district court – having reviewed Plaintiff's arguments based on extensive court-ordered discovery – found that drivers using Uber's Driver App are not exempt from the FAA, holding "Uber drivers do not participate in a single, unbroken stream of interstate commerce." *Singh*, No. 3:16-cv-03044, slip op. at 31 (D.N.J. Nov. 23, 2021) (internal citations omitted).

Each of these cases reaches the same conclusions, which are buttressed by the discovery taken in this matter, and fatal to Plaintiff's attempt to circumvent arbitration.

### 1. Rideshare drivers are not akin to "last-mile" drivers.

First, each decision, including decisions from the same courts that ruled in *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10 (1st Cir. 2020) and *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904

---

[1] The *Davarci* court recently denied those plaintiffs' motion for a certificate of appealability to bring an interlocutory appeal of the court's order compelling arbitration. In so doing, the court found: "Given the weight of authority in favor of the Court's Order, decisions to the contrary do not constitute 'substantial ground for difference of opinion.'" Slip op. at 4-5 (S.D.N.Y. Nov. 15, 2021).

(9th Cir. 2020), confirm that drivers who use Uber's Driver App are *not* akin to "last-mile" drivers found to fall within the transportation worker exemption in those cases.

As the Ninth Circuit explained in *Capriole*, distinguishing drivers who use Uber's Driver App from the plaintiffs in its *Rittman* decision: "Uber drivers are unaffiliated, independent participants in the passenger's overall trip, rather than an integral part of a single, unbroken stream of interstate commerce like Amflex workers." *Capriole*, 7 F.4th at 867.

When the First Circuit recently found that Lyft drivers were not within the transportation worker exemption, it likewise held that its "decision in *Waithaka* is not to the contrary." *Cunningham*, 2021 WL 5149039 at *5.

In this District, the court in *Davarci* explained, in distinguishing drivers using Uber's Driver App from Amazon last-mile drivers: "The crucial feature animating the decisions in *Waithaka* and *Rittman* was the role that last-mile drivers play in the unbroken chain of interstate commerce, all directed by Amazon, whose business is indisputably interstate in nature." *Davarci*, 2021 WL 3721374, at *13 (S.D.N.Y. Aug. 20, 2021). On the other hand, "Uber drivers' role is to provide local rides as part of an independent transaction that, at times, incidentally is part of a larger interstate journey." *Id.*; *see also Singh*, No. 3:16-cv-03044, slip op. at 31-32 (D.N.J. Nov. 23, 2021) (distinguishing last-mile drivers from rideshare drivers).

### 2. Trips to airports or transit hubs do not change the local nature of rideshare drivers' services.

It is now well established that drivers who use Uber's Driver App are not exempt by virtue of occasionally providing rides to and from airports or other purported transportation hubs. As the First Circuit recently held, the argument that rideshare drivers' trips to airports put them within the transportation worker exemption "runs headlong into the instruction supplied by *United States v. Yellow Cab Co.*" *Cunningham*, 2021 WL 5149039 at *4. In *Yellow Cab*, the Supreme Court

4

distinguished between cab companies that entered into an *exclusive* contract with railroads to transport passengers between two stations as part of one interstate journey, and cab drivers that take passengers to or from a station as part of the driver's normal local service. *Id.* (citing *Yellow Cab*, 332 U.S. at 228-29). The former may come within the transportation worker exemption, but the latter do not. *Id.* In *Capriole*, the Ninth Circuit came to the same conclusion, finding that rideshare drivers who take fares to an airport "are less like the exclusive provider of 'between-station transportation' described in *Yellow Cab* are more like a 'local taxicab service.'" *See Capriole*, 7 F.4th at 863-64.

District courts have relied on the reasoning of *Yellow Cab* to come to the same conclusion as *Capriole* and *Cunningham*. *See, e.g.*, *Davarci*, 2021 WL 3721374, at *14 ("[T]he fact that airports allow passengers to hail an Uber from 'within airport boundaries' does not transform Uber drivers from local transportation providers to part of the continuous flow of interstate commerce."); *see also Singh*, No. 3:16-cv-03044, slip op. at 31 (D.N.J. Nov. 23, 2021).Like the taxicab drivers who happened to take railroad passengers to or from a railroad station in *Yellow Cab*, Plaintiff and other drivers who use Uber's Driver App do not engage in interstate commerce merely because they take passengers to or from transportation hubs that happen to be within local driving distance from where they typically drive.

### 3. The minority position has been roundly rejected.

The few district court decisions that have found rideshare drivers exempt from the FAA have now been soundly rejected by leading authorities, and one of those decisions—*Cunningham*—was reversed by the First Circuit. For example, the Ninth Circuit specifically called out *Islam v. Lyft, Inc.*, 20-cv-3004 (RA), 2021 WL 871417 (S.D.N.Y. Mar. 9, 2021), *Haider v. Lyft, Inc.*, 20-CV-2997 (AJN), 2021 WL 1226442 (S.D.N.Y. Mar. 31, 2021), and *Cunningham v. Lyft, Inc.*, 450 Supp.3d 37, 43-45 (D. Mass. 2020), as fatally flawed because those decisions "do

*not* consider whether the trips form a part of a single, unbroken stream of interstate commerce that renders interstate travel a 'central part' of a rideshare driver's job description." *Capriole*, 7 F.4th at 866. Notably, *Islam* and *Haider* relied heavily upon the misplaced reasoning in the now-reversed *Cunningham* district court decision. *See Islam*, 2021 WL 871417, at *9; *Haider*, 2021 WL 1226442, at *4.

In the absence of controlling precedent from their own appellate courts, district courts have also specifically rejected the reasoning of *Islam* and *Haider*, and the minority view in general. In *Davarci*, the court wrote that "the minority view impermissibly reads all nuance out of Section 1's residual clause and contravenes binding Supreme Court precedent dictating the proper interpretation of Section 1 and Congress's intent in creating a limited exception to the normal reach of the FAA." 2021 WL 3721374, at *11; *Singh*, No. 3:16-cv-03044, slip op. at 32 n.8 ("In fact, in the two cases reaching a different conclusion, each court has specifically noted that further evidence may compel the majority view. Thus, with a more complete record, I am not convinced that the courts in *Haider* and *Islam* would not reach the same conclusion as the majority of courts.") (internal citations omitted).

## II.  THE COURT-ORDERED DISCOVERY CONFIRMS UBER'S POSITION

As the party resisting arbitration, Plaintiff bears the burden of proof to establish that the FAA Section 1 exemption applies. *See, e.g.*, *Singh*, No. 3:16-cv-03044, slip op. at 13 (citing *Singh v. Uber Technologies, Inc.*, 939 F.3d 210, 231-32 (3d Cir. 2019) (Porter, J., concurring in part and concurring in the judgment) ("Singh bears the burden on remand to show why the District Court should not compel arbitration under the FAA.")); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."); *Capriole*, 460 F. Supp. 3d at 928 ("As the party opposing arbitration, Plaintiffs have the burden of proving that the exemption applies.").

Despite being permitted discovery that ranges far past the proper analytical framework at issue here, Plaintiff cannot meet his burden. Indeed, the discovery ordered by this Court confirms that the work performed by drivers using Uber's Driver App, including Plaintiff, is inherently local in nature, and that they are not engaged in interstate commerce within the meaning of Section 1 of the FAA. *See, e.g.*, Supplemental Declaration of Andrew M. Spurchise ("Supp. Spurchise Decl."), **Exhibit A**.[2]

### A. Plaintiff Cannot Demonstrate that the Documents Produced Show Any Special Concern for Interstate Commerce

Plaintiff requested Uber's documents concerning: fare addenda relating to interstate trips (RFP 1); marketing relating to interstate trips (RFP 2); policies related to interstate trips (RFP 3); agreements with airports, airlines, Amtrak, or motor carriers (RFP 4); and "job postings" for drivers (RFP 5). Plaintiff will be unable to demonstrate that the documents produced by Uber show any particular interest in or concern for interstate travel.

For example, there were no marketing documents or policies related to interstate trips. *See* Supp. Spurchise Decl., **Ex. A** at 7-12. Likewise, the only documents responsive to the request for "fare addenda" related to interstate trips are the publicly-available city pages for the New York City and New Jersey markets, which reflect surcharges charged to riders for trips originating in New York City and ending in New Jersey or originating in New Jersey and ending in New York City. *See* Supp. Spurchise Decl., **Ex. A** at 9-10; *Id.*, **Ex. B**.[3] Far from facilitating interstate transportation, these surcharges are a function of *state and local* regulations that *prohibit* drivers

---

[2] Uber has redacted those portions of its written discovery responses marked "Confidential" pursuant to the parties' Stipulated Protective Order in this case and, at this time, does not intend to rely on such information. As it is Plaintiff's burden to prove the application of the FAA Section 1 exemption, to the extent Plaintiff intends to rely on any information designated "Confidential" in opposing arbitration, Uber is willing to meet and confer regarding the use of that information and/or the filing of that information under seal, as appropriate.

[3] Exhibits annexed to the Declaration of Andrew Spurchise are cited as **Exhibit \_\_**, or **Ex. \_\_**.

from picking up passengers outside of the local jurisdiction in which they are authorized to operate after completing a trip. These surcharges are paid by riders to drivers and are intended to offset tolls incurred by drivers for their fare-less return to their jurisdiction of origin. *See* Supp. Spurchise Decl., **Ex. A** at 9-10.

Finally, there were no responsive agreements with airlines, Amtrak, or motor carriers. *Id.* at 14-18. Nor can Plaintiff point to any evidence of a synergistic or exclusive relationship with airports for drivers to transport riders. Accordingly, just as in *Capriole*, here there is "no evidence that Uber exclusively contracted with airlines such that its drivers would 'serve[] only [airport] passengers' or otherwise participate in a single, unbroken stream of interstate commerce." *Id.* at 865.

### B. Plaintiff Cannot Show that the Data Produced Establishes that Interstate Trips are a Central Part of the Services Provided by Drivers

The data produced by Uber in response to Plaintiff's interrogatories confirm that neither interstate trips nor trips to airports or other transit hubs are a central part of the services provided by drivers using Uber's Driver App. From 2018 through 2021, the percentage of nationwide Uber trips that were interstate in nature ranged from 2.1% to 2.5%. *See* **Ex. A**, at 26. The percentage of total trips that were to or from airports were only slightly higher, and ranged between 7.3% and 10.1% of all trips taken by those drivers. *See id.* at 36-37. Finally, trips to a series of New York City "transit hubs" for which Plaintiff requested data ranged from 0.49% to 0.63% of all trips taken in the NYC Metro Area.[4] Plaintiff cannot demonstrate that these percentages reflect any special arrangement or obligation by any driver to transport riders across state lines or to service airports

---

[4] The NYC Metro Area is defined, for purposes of these interrogatory responses to include: New York City, the surrounding New York City suburbs, and all of New Jersey and Connecticut. *See* **Ex. A** at 40.

or other transport hubs. In fact, this data confirms the absence of any such arrangement or obligation that might bring drivers within the Section 1 exemption. *Singh*, No. 3:16-cv-03044, slip op. at 30-31 (collecting cases).

### III. ALTERNATIVELY, PLAINTIFF IS COMPELLED TO ARBITRATE ITS CLAIMS UNDER NEW YORK LAW

Because the FAA applies, Plaintiff is required to arbitrate regardless of any state law to the contrary. Nonetheless, as stated in Uber's opening brief, the Arbitration Provision and the class action waiver are nonetheless fully enforceable under New York law. *See* CPLR § 7501; *Am. Int'l Specialty Lines Ins. Co. v. AlliedCapital Corp.*, 35 N.Y.3d 64, 70 (2020) (reiterating "New York's long and strong public policy favoring arbitration"); *Xue Wen v. Am. Bus. Inst. Corp.*, 2020 NY Slip Op 31472(U), 2020 WL 2621715 (Sup. Ct. N.Y. Cty. May 20, 2020) (enforcing arbitration provision with a class waiver). Notably, there is no transportation worker exemption under New York law, and state law contains no prohibition against enforcement of voluntary Arbitration Provisions such as the one at issue here. *See Espinosa v. SNAP Logistics Corp.*, No. 17 CIV. 6383 (AT), 2018 WL 9563311, at *4 (S.D.N.Y. Apr. 3, 2018) ("A number of district courts in the Second Circuit have concluded that the FAA's exemption for transportation workers does not preclude enforcement of an arbitration provision in a transportation worker's contract under New York law.").

The Arbitration Provision here is not invalidated by CPLR § 7515 because Plaintiff could have opted out, and it is therefore not mandatory. The provision relied upon by Plaintiff prohibits "any clause or provision in any contract *which requires* as a condition of the enforcement of the contract or obtaining remedies under the contract that the parties submit to *mandatory* arbitration to resolve any allegation or claim of discrimination, in violation of laws prohibiting discrimination, including but not limited to, article fifteen of the executive law." N.Y. C.P.L.R. § 7515(a)(2)

(emphasis added), (b)(i).  In this case, Plaintiff could have opted out of the Arbitration Provision and still been able to enforce the remainder of his rights under the 2020 PAA.  *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (finding opt-out provision valid and not illusory); *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 55-56 (E.D.N.Y. 2017) (same).  Since the Arbitration Provision was not a required condition of the contract, Section 7515 does not bar its enforcement.

### IV.   CONCLUSION

For all the foregoing reasons, Uber respectfully requests that this Court compel Plaintiff to arbitrate his claims.

Date:   November 29, 2021
        New York, New York

                                           */s/ Andrew M. Spurchise*
                                           Andrew M. Spurchise
                                           Miguel A. Lopez
                                           Littler Mendelson, P.C.
                                           900 Third Avenue 8th Floor
                                           New York, NY 10022
                                           (212) 583-9600
                                           aspurchise@littler.com
                                           malopez@littler.com

                                           *Attorneys for Uber Technologies, Inc.*