

**Littler Mendelson P.C.**
900 Third Avenue
New York, NY  10022.3298


Andrew M. Spurchise
212.583.2684 direct
212.583.9600 main
212.832.2719 fax
aspurchise@littler.com

June 13, 2022


Hon. Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:**   *Golightly v. Uber Technologies, et al.*, 21-cv-03005-LJL

Dear Judge Liman:

  This firm represents Defendant Uber Technologies, Inc. ("Uber") in the above-referenced matter. Uber writes in response to this Court's June 6, 2022 text order (ECF No. 47) inviting the parties to submit letter briefs to address the impact (if any) on Uber's pending motion to compel arbitration of the Supreme Court's decision in *Southwest Airlines Co. v. Saxon*, No. 21-309 (U.S. June 6, 2022) ("*Saxon*").

  *Saxon* does not change the proper outcome with respect to the issue before this Court: rideshare drivers using Uber's Driver App do not fit within the narrow exemption in Section 1 of the Federal Arbitration Act ("FAA") for certain transportation workers "engaged in…interstate commerce."

  *Saxon* involved a Southwest Airlines employee who frequently loaded and unloaded cargo on and off airplanes traveling across the country and the world. The Supreme Court held that the Section 1 exemption applied to such workers, finding that cargo loaders are "intimately involved" with Southwest's interstate transportation of cargo and that the interstate journey "is still in progress" when the worker is loading or unloading cargo on or off an airplane carrying that cargo. *Saxon*, slip op. at 6.

  As numerous courts have held, rideshare drivers do not share these same features. Rather, "Uber drivers are unaffiliated, independent participants in the passenger's overall trip, rather than an integral part of a single, unbroken stream of interstate commerce[.]" *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 867 (9th Cir. 2021); *see also, e.g.*, *Davarci v. Uber Techs., Inc.*, 2021 WL 3721374, at *14 (S.D.N.Y. Aug. 20, 2021) ("[T]he fact that airports allow passengers to hail an Uber from 'within airport boundaries' does not transform Uber drivers from local transportation providers to part of the continuous flow of interstate commerce."); *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 917 (N.D. Cal. 2020) (rideshare drivers not exempt under Section 1 because "relationship to interstate transit is only casual and incidental" without the "requisite 'practical and economic continuity' with interstate air or rail transportation"); *Osvatics v. Lyft, Inc.*, 2021 WL 1601114, at *15 (D.D.C. Apr. 22, 2021) (Lyft drivers as a class are not "engaged in …interstate commerce" within the meaning of section 1 of the FAA, because no "established link between such

Hon. Lewis J. Liman
June 13, 2022
Page 2

intrastate rideshare trips and the channels of commerce that are designed to facilitate passengers' interstate journeys.").

Indeed, the *Saxon* Court specifically declined to address whether workers "further removed" from the channels of interstate commerce are exempt under Section 1. The Court cited as an example the food delivery drivers in *Wallace v. Grubhub*, 970 F.3d 798, 803 (7th Cir. 2020), workers providing local transportation services much more akin to rideshare drivers than to the cargo loaders in *Saxon*. *Saxon*, slip op. at fn. 2.

If anything, *Saxon* supports the conclusion that rideshare drivers like Plaintiff are not exempt from the FAA.

First, *Saxon* confirms the Court must reject Plaintiff's request to interpret the Section 1 exemption expansively and ignore the Supreme Court's prior precedent, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). (Dkt. 44 at 10-15.) *Saxon* expressly reaffirmed the principles laid out in *Circuit City* for defining the Section 1 exemption. Saxon, slip op. at 5-6. The *Saxon* Court confirmed that the Section 1 exemption is narrow and requires that the class of worker in question pay a "*direct and necessary* role in the free flow of goods across borders." *Id.* at 6 (quotations omitted; emphasis added). The Court continued that the workers "must be actively engaged in transportation of those goods across borders via the channels of foreign or interstate commerce." *Id.* (quotations omitted).

Second, *Saxon* confirms that what matters for determining the application of the exemption is "the actual work that the members of the class, as a whole, *typically* carry out." *Saxon*, slip op. at 4 (emphasis added). The evidence in this case establishes conclusively that, as a class, rideshare drivers using Uber's Driver App *rarely*—not typically—engage in transportation across borders. "As almost any user of Uber's product would attest, Uber trips are often short and local, and they only infrequently involve either crossing state lines or a trip to a transportation hub, as the evidence demonstrates." *Capriole*, 7 F.4th at 865; (Dkt. 43 at 8) ("From 2018 through 2021, the percentage of nationwide Uber trips that were interstate in nature ranged from 2.1% to 2.5%. … The percentage of total trips that were to or from airports were only slightly higher, and ranged between 7.3% and 10.1% of all trips[.] Finally, trips to a series of New York City 'transit hubs' for which Plaintiff requested data ranged from 0.49% to 0.63% of all trips taken in the NYC Metro Area.").

Third, the *Saxon* Court's heavy emphasis on a worker's role in the free flow of **goods** suggests that—as Uber has argued (Dkt. 22-1, Section III.B.3)—the transportation worker exemption is limited to workers involved in the movement of *goods*, rather than passengers. *Saxon*, slip op. at 6 (any worker exempt from the FAA "must at least play a direct and necessary role in the free flow of goods across borders") (quotations omitted). See *Kowaleski v. Samandarov*, 590 F. Supp. 2d 477, 484 (S.D.N.Y. 2008) (black car drivers not exempt under Section 1 because they did not move "physical goods" – an "indispensable element to being engaged in commerce in the same way that seamen and railroad workers are.") (quotations omitted).

Hon. Lewis J. Liman
June 13, 2022
Page 3

      In sum, to the extent any conclusion relevant to the issue before the Court can be drawn from *Saxon*, it is that—as determined by the overwhelming majority of courts including the Ninth and First Circuits—rideshare drivers like Plaintiff are not exempt from the FAA. *Capriole*, *supra*; *Cunningham v. Lyft, Inc.*, 17 F.4th 244, 250 (1st Cir. 2021); *see also, e.g., Davarci v. Uber Techs., Inc.*, 2021 WL 3721374 (S.D.N.Y. 2021). Uber's motion to compel arbitration must therefore be granted, and Plaintiff's arbitration agreement with Uber enforced.

Respectfully submitted,


Andrew M. Spurchise
Shareholder

AMS